UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

UNITED STATES OF AMERICA )
)
v. ) 2:08-CR-38
) JUDGE JORDAN
ROBERT MARK MCPHERSON )
aka MARK MCPHERSON )

PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Robert Mark McPherson also known as Mark McPherson, and the defendant's attorney, Robert B. Dickert, have agreed upon the following:

1. The defendant will plead guilty to the following count in the Fourth Superseding Indictment:

a) The lesser included offense related to Count 1, that is, conspiracy to distribute and to possess with the intent to distribute 5 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B).

The punishment for this offense is as follows: The maximum penalty to which the defendant will be exposed by virtue of the guilty plea is a minimum mandatory term of imprisonment of 5 years up to 40 years, a fine of $2,000,000.00, a term of supervised release of at least four years to life, and a mandatory assessment of $100.00.

b) In consideration of the defendant's guilty plea, the United States agrees to move the Court at the time of sentencing to dismiss the remaining counts against the defendant in this indictment.

2. The parties agree that the appropriate disposition of this case would be the following:

    a) The Court may impose any lawful term of imprisonment up to the statutory maximum;

    b) The Court may impose any lawful fine up to the statutory maximum;

    c) The Court may impose any lawful term of supervised release up to the statutory maximum;

    d) The Court will impose a special assessment fee as required by law; and

    e) The Court may order forfeiture as applicable and restitution as appropriate.

3. The defendant has read the Fourth Superseding Indictment, discussed the charges and possible defenses with defense counsel, and understands the crimes charged. The defendant is pleading guilty because the defendant is, in fact, guilty.

    a) In order to be guilty of Count 1, the defendant agrees that each of the following elements of the crime must be proved beyond a reasonable doubt: The defendant (1) did combine, conspire, confederate, and agree with at least one other person to distribute and possess with the intent to distribute 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II, controlled substance, (2) that the defendant knowingly, intentionally, and without authority joined the conspiracy to distribute and to possess with the intent to distribute methamphetamine, and (3) the defendant intended to further the conspiracy to distribute and to possess with the intent to distribute methamphetamine.

2

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

a) Through the testimony of several witnesses, to include co-conspirators, the United States would demonstrate, beyond a reasonable doubt, the following: that from approximately the month of February, 2007, and continuing to on or about October, 2008, in the Eastern District of Tennessee and elsewhere, the defendant did knowingly, intentionally, and without authority, conspire with at least one other person to distribute and possess with the intent to distribute a quantity of a mixture and substance containing methamphetamine of which at least 20 grams but less than 35 grams was actual methamphetamine, a Schedule II controlled substance.

b) During the time frame of the conspiracy, the defendant and co-defendant Christie Taylor, also known as Christie McPherson, obtained gram quantities of methamphetamine from individuals, including co-defendants Jack Trivette and Tony Trivette, and further distributed a portion of that methamphetamine to others in the Eastern District of Tennessee and the Western District of Virginia.

c) On April 30, 2008, co-defendant Jack Trivette was stopped by law enforcement agents in Bristol, Virginia, and was found to be in possession of 563.1 grams of methamphetamine. Co-defendant Jack Trivette was transporting that methamphetamine from

3

his residence at 7023 Highway 421, Bristol, Tennessee, to co-defendant Tony Trivette's residence at 6011 Dishner Valley Road, Bristol, Virginia.

d) On May 1, 2008, the co-defendant Jack Trivette contacted his brother Mike Trivette from the Washington County Virginia jail and asked his brother to remove a large red rubber tub from his house.

e) On May 1, 2008, the defendant and co-defendants Taylor and Julie Francisco, removed a quantity of methamphetamine from the residence of co-defendant Jack Trivette which was contained in a large red rubber tub. The defendant and co-defendants Taylor and Francisco drove the methamphetamine to the defendant and co-defendant Taylor's residence in the Eastern District of Tennessee.

f) On May 15, 2008, agents discovered a quantity of a white substance in a car which had been in the possession of the defendant and co-defendant Taylor. Also in the car, agents also located a receipt dated May 7, 2008, for the purchase of four pounds of Methylsulfonylmethane, a dietary supplement that is similar in appearance to methamphetamine. A chemical analysis of the white substance found in the car did not indicate the presence of any controlled substance, however, it was determined to be Methylsulfonylmethane.

g) The defendant admits that between May 1, 2008, and May 15, 2008, he and co-defendant Taylor used a portion of the methamphetamine and also distributed at least 20, but less than 35 grams of actual methamphetamine, which they had removed from co-defendant Jack Trivette's house. The defendant further admits that he and co-defendant

4

Taylor attempted to hide their use and distribution of the methamphetamine from co-defendant Jack Trivette by replacing it with a quantity of Methylsulfonylmethane.

h) On May 15, 2008, the defendant was interviewed by DEA Special Agent Tracy Bishop. On that date, the defendant denied any knowledge of the substance in the car and denied being either a drug user or a drug distributor. The defendant did, however, admit to having known co-defendant Jack Trivette for years.

i) On May 23, 2008, Sgt. Burk Murry of the 2nd Judicial Drug Task Force interviewed the defendant and co-defendant Taylor at their residence in Bristol, Tennessee. During the interview, the defendant admitted that he used methamphetamine. The defendant and co-defendant Taylor consented to a search of their room. During the search, agents found a false bottom can containing three baggies of methamphetamine, a set of digital scales, a camera bag which contained a second set of digital scales, glass pipes, rolling papers, and spoons with white residue.

j) On October 8, 2008, the defendant and co-defendant Taylor were arrested at a hotel in Bristol, Tennessee. During the arrest, agents seized two digital scales, approximately $930.00 in U.S. currency, small baggies containing methamphetamine, a quantity of marijuana, various glass pipes and other drug paraphernalia, and a money gram receipt for a $2,800.00 transfer of money by the defendant.

k) The defendant agrees that, in total, he conspired to distribute and to possess with the intent to distribute between 20 and 35 grams of actual methamphetamine.

5. The defendant understands that by pleading guilty the defendant is giving up several rights, including:

5

a) the right to plead not guilty;

b) the right to a speedy and public trial by jury;

c) the right to assistance of counsel at trial;

d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

e) the right to confront and cross-examine witnesses against the defendant;

f) the right to testify on one's own behalf, to present evidence in opposition to the charges and to compel the attendance of witnesses; and

g) the right not to testify and to have that choice not used against the defendant.

6. The defendant further agrees to cooperate completely and truthfully with any and all law enforcement agents and personnel of the United States Attorney's Office. This cooperation includes, but is not limited to, meeting with and being interviewed by such law enforcement agents or personnel of the United States Attorney's Office whenever requested. The defendant further agrees not to protect anyone who was truly involved and not to falsely implicate anyone who was not truly involved in the commission of criminal offenses. The defendant further agrees to testify completely and truthfully before a federal grand jury, at any trial, or at any other proceeding if called upon by the United States to do so. Upon request by the United States, the defendant must furnish all documents, objects and other evidence in the defendant's possession, custody or control that are relevant to the United State's inquiries. The defendant and defense counsel also knowingly, voluntarily, and intentionally waive the

6

defendant's right (where applicable) to have defense counsel present during the course of cooperation, including questioning or court appearances.

7. To ensure the defendant's truthful cooperation, the United States agrees, except as provided below, not to use any self-incriminating information provided by the defendant pursuant to this written plea agreement against the defendant. However, nothing in this plea agreement shall be applied to restrict the use of any information, (1) known to the United States prior to entering into this written plea agreement; (2) obtained from any other source; or (3) concerning the defendant's prior criminal record. Should any of the following occur (1) the defendant provides false or materially misleading information during the course of the defendant's cooperation; or (2) later moves to withdraw the defendant's guilty plea, then the United States may make use of any information provided by the defendant for any purpose in any subsequent proceeding, including grand jury, trial and sentencing phases of this case or in any other prosecutions or proceedings against the defendant.

8. At the time of sentencing, the United States may bring to the Court's attention the nature, extent, and value of the defendant's cooperation so that it may be considered in determining a fair and appropriate sentence under the facts of the case.

9. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, the United States agrees to move, at or before the time of sentencing, that the Court decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make statements that

7

are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of additional offenses prior to sentencing, the United States will be free not to make such motion or to withdraw such motion if already made, and will be free to recommend to the Court that the defendant not receive any offense level reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

10. The defendant agrees to pay the special assessment in this case prior to sentencing.

11. No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding the potential sentence in this case are not binding on the Court. The defendant understands that the sentence in this case will be determined by the Court after it receives the pre-sentence report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

12. Unless otherwise limited by an agreed preliminary order of forfeiture, the defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, which are in the possession or control of the defendant or the defendant's nominees that were used and intended to be used in any manner or part to

8

commit and to facilitate the commission of a violation of Title 21, United States Code, Section 846 and/or 841(a)(1), and/or any and all assets and property, or portions thereof, subject to forfeiture as proceeds of the defendant's criminal activities which are in the possession or control of the defendant or the defendant's nominees. The defendant further agrees to assist the United States fully in the identification, recovery and return to the United States of any other assets or portions thereof subject to forfeiture. The defendant further agrees to make a full and complete disclosure of all assets over which the defendant exercises control and those which are held or controlled by a nominee. The defendant agrees to forfeit all interests in the properties as described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and the signing of any other documents necessary to effectuate such transfers. The defendant agrees not to object to any civil or criminal forfeiture brought against these properties. The defendant agrees to take all such steps to locate such property and to pass title to the United States before the defendant's sentencing.

13. The defendant agrees to pay any fine and/or restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect the fine and/or restitution

obligation by set-off of program payments, execution on non-exempt property, and any other means the United States deems appropriate. Finally, the defendant and counsel agree that the defendant may be contacted regarding the collection of any fine and/or restitution without notifying counsel and outside the presence of counsel.

14. (a) In consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offenses committed, the defendant agrees not to file a direct appeal of the defendant's conviction or sentence except the defendant retains the right to appeal a sentence imposed above the sentencing guideline range as determined by the district court.

(b) In addition, the defendant knowingly and voluntarily waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack the defendant's conviction and/or resulting sentence. The parties agree that the defendant retains the right to raise, by way of collateral review under § 2255, claims of ineffective assistance of counsel or prosecutorial misconduct not known to the defendant by the time of the entry of judgment.

15. This agreement becomes effective once it is signed by the parties. If the United States violates the terms of this agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this agreement, moves to withdraw the defendant's guilty plea, or violates any court order or any local, state or federal law pending the resolution of this case, then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that

10

the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or statutory speedy trial defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea in this case.

16. This plea agreement constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charges, and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

James R. Dedrick
United States Attorney

August 31, 2009
Date

By: _____
Caryn L. Hebets
Assistant United States Attorney

8-31-09
Date

Robert Mark McPherson
Also known as Mark McPherson
Defendant

8-31-09
Date

Robert B. Dickert
Attorney for Defendant

11